THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:25-cv-00397-MR-WCM

| | |
|---|---|
| MARILENA MURPHY, individually and on behalf of a class of other similarly situated persons,<br><br>        Plaintiff,<br><br>vs.<br><br>DOLLAR TREE, INC.,<br><br>        Defendant. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Remand [Doc. 7].

## I.    PROCEDURAL AND FACTUAL BACKGROUND

On October 6, 2025, the Plaintiff Marilena Murphy, on behalf of herself and a putative class of similarly situated persons, initiated this action against the Defendant Dollar Tree, Inc. in Buncombe County Superior Court. [Doc. 1-1 at 6]. The Plaintiff's state-court class action Complaint asserts a single cause of action for violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g)(1), which provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon

any receipt provided to the cardholder at the point of sale or transaction." [Id. at ¶ 97]. The Plaintiff alleges that the Defendant violated FACTA by providing her a "printed receipt that displayed the first six and last four digits of her debit card number," and that the Defendant provided thousands of other customers similarly violative receipts. [Id. at ¶¶ 66, 82, 88].

On November 7, 2025, the Defendant timely filed a Notice of Removal to this Court pursuant to 28 U.S.C. § 1331 and the Class Action Fairness Act, 28 U.S.C. § 1332(d). [Doc. 1]. On November 17, 2025, the Plaintiff filed the instant Motion to Remand challenging the Defendant's basis for removal. [Doc. 7]. For grounds, the Plaintiff adopts a counterintuitive position that is nevertheless common in similar FACTA litigation: she contends that this Court lacks subject matter jurisdiction because she lacks Article III standing as she has not suffered a concrete injury-in-fact and that remand is therefore required. [Id.]. The Defendant filed a Response on December 1, 2025, [Doc. 9], and the Plaintiff filed a Reply on December 8, 2025, [Doc. 10]. Having been fully briefed, this motion is ripe for disposition.

## II. STANDARD OF REVIEW

A defendant may remove a civil action from a state court if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The party seeking removal has the

burden to demonstrate that federal jurisdiction is proper. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Federal courts are "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting Mulcahey, 29 F.3d at 151). Therefore, when reviewing removal, courts must "resolve doubts in favor of remand." Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151; see also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## III. DISCUSSION

The "case or controversy" provision of the Constitution dictates that a federal court has no subject matter jurisdiction unless the Plaintiff has "standing." Raines v. Byrd, 521 U.S. 811, 818 (1997). In the class action context, the Plaintiff who brings the action on behalf of the class must have standing in order to invoke the Court's jurisdiction, even if other class members would have standing. TransUnion LLC v. Ramirez, 594 U.S. 413, 430-31 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or

imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Id. at 423. Regarding the injury-in-fact requirement, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." Id. at 426-27. "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. at 427 (emphasis in original).

To determine whether a harm is concrete for purposes of Article III, courts look to "history and tradition" as a "meaningful guide." Id. at 424 (citation and internal quotation marks omitted). "[T]raditional tangible harms, such as physical harms and monetary harms," are the "most obvious" concrete harms. Id. at 425. Intangible harms, especially "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," can also be concrete. Id. Such intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion." Id. Finally, while courts must also "afford due respect to Congress's decision . . . to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation,"

Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is."[1] Id. at 426 (citation and internal quotation marks omitted). "To establish that a statutory violation 'identifies an injury sufficient for standing purposes,' the party invoking federal jurisdiction may 'identif[y] a close historical or common-law analogue' for the plaintiff's asserted injury." Parsons v. United Collections Bureau, Inc., No. 1:22-CV-00170-MR-WCM, 2022 WL 17095204, at *2 (W.D.N.C. Nov. 21, 2022) (quoting Garey v. James S. Farrin, P.C., 35 F.4th 917, 921 (4th Cir. 2022)).

In accord with these principles, the Fourth Circuit has concluded that "[c]ases involving the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681 *et seq.*, show that a FACTA digit-truncation violation isn't a concrete injury unless it creates a nonspeculative risk of identity theft." O'Leary v. TrustedID, Inc., 60 F.4th 240, 243 (4th Cir. 2023); see also Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 344-47 (4th Cir. 2017) (concluding that a similar procedural violation did not establish a concrete injury-in-fact). As another court in this circuit has concluded, the Fourth Circuit's conclusion

---

[1] Congress has the authority to set and regulate the jurisdiction of federal courts, but it cannot *expand* such jurisdiction more widely than the Constitution allows under Article III. TransUnion, 594 at 429 ("A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority." (emphasis in original)).

"makes sense" because "Congress passed FACTA to prevent identify theft which does not automatically occur when a receipt with too many digits is printed." Locklear v. NTY Franchise Co., LLC, No. 5:23-CV-00261-BO, 2023 WL 6972983, at *2 (E.D.N.C. Oct. 23, 2023). Other circuits have reached the same conclusion. See, e.g., Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 119 (3d Cir. 2019) (concluding that an alleged FACTA digit-truncation injury was "not itself concrete and the alleged risk of identity theft [was] too speculative to satisfy the requirement of concreteness"); Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 936 (11th Cir. 2020) (en banc) ("[The plaintiff] has alleged that a cashier handed him a receipt containing some of his own credit card information printed on it. Although the receipt violated the law because it contained too many digits, [the plaintiff] has alleged no concrete harm or material risk of harm stemming from the violation."). Therefore, to establish that a plaintiff asserting a FACTA digit-truncation violation has standing, a "defendant has to point [to] some harm from the digit truncation violation that is sufficiently concrete to establish an injury in fact." Locklear, 2023 WL 6972983, at *2.

In the present matter, the Defendant points without further explanation to a series of injury allegations from the Plaintiff's state-court Complaint and contends that "the Court must hold that none of the injuries Plaintiff alleges

to have suffered are cognizable injuries under Article III." [Doc. 9 at 4-5]. The relevant injury allegations include:

> violation of statutory rights under 15 U.S.C. § 1681c(g), violation of legally protected interests, invasion of privacy, lost opportunity costs, loss related to the benefit of the bargain, loss of time addressing Defendant's acts or omissions in relation to her personal financial information, loss pertaining to privacy protection expectations, loss of the ability to utilize Defendant's exchange policy, diminution of the value of the goods purchased, and exposure to an elevated risk of identity theft.

[Id. at 4 (quoting [Doc. 1-1 at ¶ 3])]. Additional injuries alleged by the Plaintiff include a "breach of confidence and breach of an implied bailment," as well as the "expos[ure] [of] Plaintiff's private financial information to others who handled the receipt." [Id. (quoting [Doc. 1-1 at ¶¶ 74, 104])]. The Defendant bears the burden to demonstrate subject matter jurisdiction at this stage. However, the Defendant has presented nothing beyond these bare conclusory allegations from which the Court can glean that the Plaintiff has suffered any cognizable injuries under Article III.

The Court analyzes the Plaintiff's allegations as follows to discern whether any are sufficient to provide the Court with jurisdiction. It is undisputed that the Plaintiff's alleged statutory injury—the Defendant's procedural violation of 15 U.S.C. § 1681c(g)(1)—is by itself insufficient to

establish Article III standing.[2] The question before the Court is whether the Plaintiff's other allegations identify a concrete injury-in-fact that provides a constitutionally permissible basis for the Court's exercise of subject matter jurisdiction.

In Locklear, the Eastern District of North Carolina addressed the same question upon review of a state-court Complaint that contained injury allegations largely identical to the injury allegations in the state-court Complaint at issue here.[3] Compare [Doc. 1-1 at ¶¶ 3, 70-71, 74, 104], with Compl. at ¶¶ 3, 73-74, 78, 103, Locklear, 2023 WL 6972983. In Locklear, the court parsed the plaintiff's injury allegations into three general theories of harm: (1) "self-inflicted harms inextricably linked to the absence of material risk of identity theft," (2) "economic harm" due to "purchas[ing] goods whose price reflected the costs of securing customer's financial information," and (3) harm that is "sufficiently analogous to the harm in traditional torts." Locklear, 2023 WL 6972983, at *2-*3. The court analyzed each theory,

---

[2] The Defendant disputes the Plaintiff's assertion that O'Leary establishes that "claims seeking only statutory damages do not assert a harm meeting the federal injury-in-fact requirement," [Doc. 7 at 3], but the Defendant nowhere disputes the applicability of the principle from O'Leary that "a FACTA digit-truncation violation isn't a concrete injury unless it creates a nonspeculative risk of identity theft," O'Leary, 60 F.4th at 243, to the facts as alleged.

[3] The plaintiff in Locklear was represented by Miller Law Group, PLLC, which also represents the Plaintiff in this matter.

8
Case 1:25-cv-00397-MR-WCM    Document 11    Filed 02/09/26    Page 8 of 15

concluded that none of the injury allegations established a concrete injury-in-fact, and remanded the matter to state court. Id. at *2-*4. Other district courts routinely reach the same conclusion when they address the same question—i.e., whether similar injury allegations in support of a FACTA digit-truncation claim establish a concrete injury-in-fact. See, e.g., Barrientos v. Williams-Sonoma, Inc., No. 21-CV-05160, 2023 WL 5720855 (N.D. Ill. Sept. 1, 2023); Peskett v. Designer Brands, Inc., No. CV200563FMOAFMX, 2020 WL 2519887 (C.D. Cal. May 18, 2020); Siglin v. Sixt Rent a Car, LLC, No. 20CV503 DMS (BLM), 2020 WL 3468220 (S.D. Cal. June 25, 2020); Johnson v. Sonic Corp., No. 20-1240-JWB, 2020 WL 7643497 (D. Kan. Dec. 23, 2020); Whisman v. Designer Brands Inc., No. 21-21708-CIV, 2021 WL 2389544 (S.D. Fla. June 11, 2021); Keim v. Trader Joe's Co., No. CV1910156PSGMRWX, 2020 WL 564120 (C.D. Cal. Feb. 5, 2020); Colin v. Alpargatas USA, Inc., No. CV 21-9394-GW-EX, 2022 WL 557179 (C.D. Cal. Feb. 4, 2022); Kamel v. Hibbett, Inc., No. 8:22-CV-01096-RGK-E, 2022 WL 2905446, at *2 n.1 (C.D. Cal. July 22, 2022) ("It appears no district court that has considered FACTA violations similar to this one has denied a motion to remand.").

Applying the Locklear framework, the Court concludes that the Plaintiff's risk of identity theft under the facts alleged is speculative at best.

Although the Plaintiff alleges that her debit card information was printed on a receipt, she also alleges that she "secure[d] the receipt provided to her by Defendant." [Doc. 1-1 at ¶ 52]. So long as the Plaintiff kept or destroyed her receipt, the information on the receipt could not be disclosed to a third party, eliminating any risk of identity theft. The Plaintiff alleges that the printing of the receipt disclosed her debit card information "to the employee who provided the receipt, other employees who were present, and to anyone else who viewed the receipt." [Id. at ¶ 73]. The Plaintiff does not allege, however, that any other employees were present or that anyone else viewed the receipt. As such, these consequences are purely speculative. Moreover, "[e]ven if Plaintiff alleged that [an] employee saw the receipt, the Court is not convinced that such an allegation would in fact constitute an identifiable harm, given that the employee who handed the receipt presumably did so after Plaintiff voluntarily provided [her debit] card," which contains even more financial information than the receipt, "to the employee for processing." Keim, 2020 WL 564120, at *2 (citation and internal quotation marks omitted). Accordingly, the Plaintiff's injury allegations regarding exposure to risk of identity theft and the potential self-inflicted losses linked to that risk—i.e., "loss of time addressing Defendant's acts or omissions" and "loss pertaining

to privacy protection expectations," [Doc. 1-1 at ¶ 3]—are wholly speculative and fail to identify a concrete injury-in-fact.

Second, the Plaintiff's allegations regarding economic harm are also speculative at best, if not blatantly inconsistent. The Plaintiff alleges that the "Defendant included the cost related to protecting customer financial information in the price of the goods and services it sold to Plaintiff," and "[b]ecause Plaintiff paid the full price for the goods she purchased and had her personal financial information disclosed by Defendant, she paid more for the goods than she actually received." [Doc. 1-1 at ¶¶ 70-71]. However, those allegations are inconsistent with the Plaintiff's allegations about the transaction at issue—namely, that "she provided funds to reload her prepaid debit card and paid an accompanying fee."[4] [Doc. 1-1 at ¶ 65]. In other words, the Plaintiff alleges that she experienced loss by paying full price for goods she purchased, but she also alleges that she did not purchase goods

---

[4] The Court notes that this allegation also raises questions about the Plaintiff's ability to proceed under FACTA, which is an amendment to the Fair Credit Reporting Act ("FCRA"), at all. Under FCRA, "[t]he term 'debit card' means any card issued by a financial institution to a consumer for use in initiating an electronic fund transfer from the account of the consumer at such financial institution, for the purpose of transferring money between accounts or obtaining money, property, labor, or services." 15 U.S.C.A. § 1681a. On the face of the Plaintiff's state-court Complaint, it is unclear whether the prepaid debit card at issue is, in fact, subject to provisions of FACTA and FCRA.

11

Case 1:25-cv-00397-MR-WCM    Document 11    Filed 02/09/26    Page 11 of 15

at all, let alone pay full price for them.[5]  Even in Locklear, where the plaintiff *did* purchase goods before alleging that he "paid more for the goods than he actually received," Compl. at ¶ 74, Locklear, 2023 WL 6972983, the court concluded that "it is difficult to see how the plaintiff lost any value of the items [she] purchased," Locklear, 2023 WL 6972983, at *2.  Given the facts as alleged by the Plaintiff in this matter, Locklear's conclusion applies with even more force here.  Moreover, as in Locklear, the Defendant offers no reason to think that FACTA "protects an interest in receiving the full value in a consumer transaction."  Id. at *2.  As a result, "[t]here's no need to determine whether a concrete injury in fact occurred when the allegations fail to establish that the statute creates a legally protected interest."  Id. (citing Heuer v. Smithsonian Inst., 619 F.Supp.3d 202, 211 (D.D.C. 2022)); see also Dreher, 856 F.3d at 346 (concluding that injury allegations pursuant to a FCRA violation were inadequate because they were "not the type of harm Congress sought to prevent when it enacted the FCRA").  Accordingly, the Plaintiff's injury allegations regarding economic harm—i.e., "loss related to the benefit of the bargain" and "diminution of the value of the goods

---

[5] A similar inconsistency applies to the Plaintiff's allegations regarding "loss of the ability to utilize Defendant's exchange policy."  [Doc. 1-1 at ¶ 3].  Given the nature of the transaction as alleged, the Plaintiff did not purchase any goods that she could exchange.

purchased," [Doc. 1-1 at ¶ 3]—are wholly speculative and fail to identify a concrete injury-in-fact.

Third, the Plaintiff's injury allegations invoke three traditional torts as common-law analogues: invasion of privacy, breach of confidence, and breach of an implied bailment. Under some circumstances—e.g., a party's unauthorized inquiry into and access to an individual's financial information—FCRA violations may be analogous to the tort of invasion of privacy. See, e.g., Parsons, 2022 WL 17095204, at *2. No such analogy is warranted here, however, where the only access to the Plaintiff's financial information arose during the transaction initiated by the Plaintiff and was necessary for the execution of that transaction. Similarly, a FACTA digit-truncation violation may under some circumstances be sufficiently analogous to the tort of breach of confidence, which "involves the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." Kamal, 918 F.3d at 114 (citation and internal quotation marks omitted). No such analogy is warranted here, however, as the Plaintiff does not allege that the Defendant disclosed the Plaintiff's information to any third party. "Instead, [she] pleads only that [she] 'received' a non-compliant receipt after [her] transaction." Id. Finally, as other courts have concluded, a FACTA digit-truncation violation

13
Case 1:25-cv-00397-MR-WCM   Document 11   Filed 02/09/26   Page 13 of 15

cannot reasonably be construed as analogous to a common law breach of implied bailment, as that would require showing that the parties, by engaging in a routine transaction, agreed to create a bailment of the Plaintiff's debit card information, which the Defendant returned in a "damaged condition" by printing too many of them on her receipt.  See, e.g., Barrientos, 2023 WL 5720855, at *9.  Such "damage" is not reasonably inferred, as it is purely speculative.  Accordingly, the Plaintiff's injury allegations are not sufficiently analogous to the harm in traditional torts to establish a concrete injury-in-fact.

In sum, none of the Plaintiff's injury allegations identify a concrete injury-in-fact.  As a result, and as the Plaintiff herself contends, the Plaintiff lacks Article III standing.  Because Article III standing is necessary to the Court's exercise of subject matter jurisdiction, the Court lacks jurisdiction over this matter.  Accordingly, the Court will grant the Plaintiff's motion.

In creating this private right of action for providing more than five digits of a debit card number on a sales receipt, Congress has given offended purchasers a means of redress, but Congress has not thereby placed such claims before the federal courts.  As such, Congress has left it to state courts to adjudicate such claims, which Congress has the Constitutional authority

to do. That is where such claims belong, and it is to the state court that this matter is remanded.

## IV. CONCLUSION

The Defendant failed to carry its burden of demonstrating that the Plaintiff suffered a concrete injury-in-fact. Therefore, the Plaintiff lacks Article III standing, and this Court lacks subject matter jurisdiction. Accordingly, remand is warranted.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Remand [Doc. 7] is **GRANTED**, and this case is hereby **REMANDED** to the General Court of Justice Superior Court Division of Buncombe County, North Carolina for further proceedings. The Clerk of Court is respectfully directed to provide a certified copy of this Order to the Buncombe County Superior Court Clerk.

**IT IS SO ORDERED.**

Signed: February 6, 2026

Martin Reidinger
Chief United States District Judge